**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

|  |  |
|---|---|
| **MARISSA ROOT**,<br><br>Plaintiff,<br><br>v.<br><br>**UNIVERSITY OF UTAH, UTAH VALLEY UNIVERSITY**, and **UTAH SYSTEM OF HIGHER EDUCATION**,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [36] DEFENDANT USHE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND GRANTING [37] DEFENDANT UTAH VALLEY UNIVERSITY'S MOTION TO DISMISS**<br><br>Case No: 2:21-cv-00744-DBB-PK<br><br>District Judge David Barlow<br>Magistrate Judge Paul Kohler |

Before the court is Defendant Utah System of Higher Education ("USHE")'s Motion to Dismiss Second Amended Complaint[1] and Defendant Utah Valley University ("UVU")'s Motion to Dismiss.[2] Defendants USHE and UVU move the court to dismiss Plaintiff Marissa Root's Second Amended Complaint, arguing that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court grants both motions to dismiss.

## BACKGROUND[3]

As alleged in Plaintiff's Second Amended Complaint,[4] the University of Utah ("U of U") and UVU are member schools of the Utah System of Higher Education.[5] USHE is governed by the Utah Board of Higher Education (the "Board").[6] The Board "is the designated state

---

[1] ECF No. 36, filed Sept. 7, 2022.
[2] ECF No. 37, filed Sept. 7, 2022.
[3] "[F]or purposes of resolving a Rule 12(b)(6) motion, [courts] accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).
[4] Second Am. Compl., ECF No. 35.
[5] *Id.* at ¶¶ 2–3.
[6] *Id.* at ¶ 5.

educational agency authorized to negotiate and contract with the federal government and to accept financial or other assistance from the federal government."[7] It also has authority to enact regulations governing the conduct of university and college students, faculty, and employees.[8]

The Board's policies require it and its institutions to "collaborate to comply with all state and federal laws pertaining to sexual misconduct, discrimination and harassment; to train and educate the faculty, staff and students about the law, policies, prevention strategies and resources addressing sexual misconduct and harassment; and to assess the climate of each campus and the system as a whole."[9] Along these lines, the Board provides training opportunities for Title IX officers;[10] it assists its institutions with entering into memorandums of understanding with local law enforcement agencies to share information, coordinate investigations, and otherwise collaborate to protect students' safety;[11] it helps its institutions identify strategies for preventing sexual harassment;[12] and it provides its institutions with other resources and opportunities to help its institutions comply with sexual misconduct, discrimination, and harassment laws.[13] Its policies allow for cross-college Title IX investigations, including access to student information across member schools.[14]

USHE is "statutorily tasked with setting the minimum requirements for each institution's safety plan regarding sexual violence."[15] "[E]ach member institution [i]s then obligated to develop a campus plan to address the rights of victims under Title IX at the behest and under the

---

[7] *Id.* at ¶ 5.
[8] *Id.* at ¶ 34.
[9] *Id.* at ¶ 21.
[10] *Id.* at ¶¶ 22–24.
[11] *Id.* at ¶ 25.
[12] *Id.* at ¶ 26.
[13] *Id.* at ¶ 27.
[14] *Id.* at ¶ 32.
[15] *Id.* at ¶ 48.

guidance of USHE."[16] Accordingly, USHE "established the statutorily based minimum

requirements at both the U of U and UVU for each institution's response to sexual violence."[17]

The U of U and UVU "have designated Title IX coordinators and administrators to carry out the

institutions' obligations under Title IX."[18]

On September 15, 2019, Plaintiff, a UVU student,[19] was sexually assaulted by a U of U

student athlete[20]—a player for the U of U's football team.[21] Plaintiff knew the football player

through mutual friends.[22] The assault took place during a small gathering at his off-campus

house attended by students enrolled at various USHE member-schools.[23] After the assault,

Plaintiff went to the hospital with two friends and completed a rape kit.[24] Hospital staff

instructed her to report the incident to UVU's Title IX Office.[25]

Heeding their advice, "Plaintiff went to UVU's Title IX office and reported the sexual

assault to Christopher Forbush and Jerrica James from UVU's Title IX Office."[26] "UVU's Title

IX Officers told Plaintiff that UVU could not help her because the football player was not their

student and was not living on campus."[27] "UVU Title IX Officers told Plaintiff to report the

incident to the U of U's Title IX office to 'scare' the football player from 'actually violently

raping someone.'"[28]

---

[16] *Id.* at ¶ 48.
[17] *Id.* at ¶ 49.
[18] *Id.* at ¶ 53.
[19] *Id.* at ¶ 105.
[20] *Id.* at ¶¶ 101, 107.
[21] *Id.* at ¶¶ 101, 105.
[22] *Id.* at ¶ 103.
[23] *Id.* at ¶¶ 102, 112, 121.
[24] *Id.* at ¶¶ 107–108.
[25] *Id.* at ¶ 109.
[26] *Id.* at ¶ 110.
[27] *Id.* at ¶ 112.
[28] *Id.* at ¶ 113.

Shortly after, Plaintiff set up an appointment with the U of U's Title IX Office.[29] At the October 3, 2019 appointment, Plaintiff reported the sexual assault to Erica Wood, an officer in the U of U's Title IX Office.[30] Ms. Wood informed Plaintiff that the U of U's obligations were to the football player, that there were limited things the U of U could do about the situation since the incident did not occur on campus, and that the complaint process was long and involved re-traumatization.[31] As Ms. Wood explained each step of the complaint process, "Plaintiff felt as though Ms. Wood was attempting to dissuade her from filing a complaint."[32] Ms. Wood described the alternate resolution program and explained how it worked.[33] "Ms. Wood then reiterated to Plaintiff that there was not much the U of U and its Title IX Office could do for Plaintiff and that Plaintiff could seek help from the Rape Recovery Center."[34] After the meeting, Ms. Wood emailed Plaintiff twice: once directly after their meeting with a list of resources for which Ms. Wood was not sure Plaintiff was eligible, and once two weeks later, explaining the U of U's limited ability to address a complaint made by a non-student, even if Plaintiff chose to make one, and suggesting that Plaintiff seek resources from UVU or the Rape Recovery Center.[35]

On December 2, 2019, Plaintiff reported the sexual assault to the Unified Police Department.[36] On February 6, 2020, Ms. Wood emailed Plaintiff because the U of U was escalating its investigative efforts into sexual assaults by its athletes following media reports on another sexual assault by one of its football players.[37] Ms. Wood asked Plaintiff whether there

---

[29] *Id.* at ¶¶ 115, 116.
[30] *Id.* at ¶ 118.
[31] *Id.* at ¶¶ 120–122.
[32] *Id.* at ¶ 122.
[33] *Id.* at ¶¶ 123–126.
[34] *Id.* at ¶ 128.
[35] *Id.* at ¶¶ 132–134.
[36] *Id.* at ¶ 136.
[37] *Id.* at ¶¶ 139, 151.

were any similarities or connections with the recent assault and Plaintiff's assault.[38] "Plaintiff

provided Ms. Wood with the contact information for the Unified Police Department Detective

assigned to her case and asked that Detective to share all of her information with Ms. Wood."[39]

On December 21, 2021, Plaintiff filed a complaint in this court asserting deliberate

indifference and disparate impact under Title IX against UVU, U of U, and USHE.[40] In March

2022, she filed an amended complaint with a single cause of action, deliberate indifference,

against all three defendants.[41] After this court granted USHE's first motion to dismiss, Plaintiff

filed a Second Amended Complaint in August 2022.[42] The U of U filed an answer,[43] and USHE

and UVU filed motions to dismiss.[44] The motions were fully briefed as of October 19, 2022.[45]

## LEGAL STANDARD

"[F]or purposes of resolving a Rule 12(b)(6) motion, [the court] accept[s] as true all well-

pleaded factual allegations in a complaint and view[s] these allegations in the light most

favorable to the plaintiff."[46] "The court's function on a Rule 12(b)(6) motion is not to weigh

potential evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted."[47]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"[48] "A claim 'has facial

plausibility' if the plaintiff 'pleads factual content that allows the court to draw the reasonable

[38] *Id.* at ¶ 140.
[39] *Id.* at ¶ 142.
[40] ECF No. 2.
[41] ECF No. 23, filed March 21, 2022.
[42] ECF No. 35, filed Aug. 24, 2022.
[43] ECF No. 38.
[44] ECF Nos. 36, 37.
[45] *See* ECF Nos. 45, 46.
[46] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).
[47] *Id.* (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).
[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

inference that the defendant is liable for the misconduct alleged.'"[49] "A plaintiff must allege

sufficient facts to 'nudge[ ] [her] claims ... across the line from conceivable to plausible.'"[50] "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."[51]

## DISCUSSION

"Title IX provides in relevant part, '[n]o person ... shall, on the basis of sex, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance.'"[52] "A school recipient of

federal funds may be liable under Title IX for its own conduct in being deliberately indifferent to

student-on-student sexual harassment."[53] To state a claim, a plaintiff must allege sufficient facts

making it plausible that the funding recipient "(1) had actual knowledge of, and (2) was

deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive

that it (4) deprived the victim of access to the educational benefits or opportunities provided by

the school."[54] Additionally, the recipient must have exercised "substantial control over the

harasser and the context in which the harassment occurred."[55]

Plaintiff alleges that USHE and UVU "responded to Plaintiff's rape by refusing to

investigate the matter or to provide any assistance."[56] Plaintiff contends that these responses

---

[49] *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[50] *Id.* (citing *Iqbal*, 556 U.S. at 680).
[51] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).
[52] *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1245 (10th Cir. 1999) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999)).
[53] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Davis*, 526 U.S. at 643).
[54] *Murrell*, 186 F.3d at 1246 (quoting *Davis*, 526 U.S. at 642).
[55] *Id.* (quoting *Davis*, 526 U.S. at 645).
[56] Second Am. Compl. ¶ 158.

6

were "clearly unreasonable and constituted deliberate indifference to Plaintiff's rape."[57] UVU

argues that Plaintiff failed to allege that it had substantial control over the assailant and the

context of the assault.[58] Similarly, USHE contends that the court should dismiss Plaintiff's Title

IX claim against USHE because Plaintiff "does not allege that USHE had substantial control

over the context in which the harassment occurred."[59] USHE also argues that it did not have

actual knowledge of the assault.[60] Because the Second Amended Complaint does not plausibly

allege that UVU or USHE had substantial control over the assailant or the context of the assault,

the court does not reach USHE's additional argument that it did not have actual knowledge of the

assault.

A "recipient of federal funds may be liable in damages under Title IX only for its own

misconduct."[61] Misconduct can include "remain[ing] idle in the face of known student-on-

student harassment in its schools"[62] or "an official decision by the recipient not to remedy the

violation."[63]

The United States Supreme Court has made it clear that in a private suit for damages, a

plaintiff alleging deliberate indifference under Title IX must show that the defendant had

substantial control over the harasser and the context of the harassment.[64] The Supreme Court has

explained that "[d]eliberate indifference makes sense as a theory of direct liability under Title IX

---

[57] *Id.* at ¶ 165.
[58] UVU's Mot. to Dismiss 7, ECF No. 37.
[59] USHE's Mot. to Dismiss 4–6, ECF No. 36.
[60] *See id.* at 6–17.
[61] *Davis*, 526 U.S. at 640.
[62] *Id.* at 641.
[63] *Id.* at 642 (quoting *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 283 (1998)); *see Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1104 (10th Cir. 2019); *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007); *Murrell*, 186 F.3d at 1247 ("Like the plaintiff in *Davis*, Ms. Murrell asserts that school officials had actual knowledge of the repeated sexual assault of her daughter and yet decided to remain idle. Ms. Murrell thus seeks to hold the School District liable for its own 'intentional conduct that violates the clear terms of [Title IX].'").
[64] *Davis*, 526 U.S. at 645.

only where the funding recipient has some control over the alleged harassment."[65] In examining

Title IX, the Court found that "[t]he statute's plain language confines the scope of prohibited

conduct based on the recipient's degree of control over the harasser and the environment in

which the harassment occurs."[66] As a result, the Supreme Court concluded: "These factors

combine to limit a recipient's damages liability to circumstances wherein the recipient exercises

substantial control over both the harasser and the context in which the known harassment

occurs."[67]

Regarding the recipient's control over the harasser, a recipient's "disciplinary authority"

over the harasser can show substantial control.[68] Therefore, a school district's students are

sometimes found to be within the substantial control of the recipient.[69] Further, the Tenth Circuit

has found that a recipient's invited guests participating in a recipient's program or activity may

be within the control of the recipient.[70]

Concerning the recipient's control over the environment, the statute requires that "the

harassment must occur 'under' 'the operations of' a funding recipient, [so] the harassment must

take place in a context subject to the school district's control."[71] The regulations promulgated

under Title IX echo this requirement:

> A recipient with actual knowledge of sexual harassment *in an
> education program or activity of the recipient* against a person in the
> United States, must respond promptly in a manner that is not
> deliberately indifferent. . . .

---

[65] *Id.* at 644.

[66] *Id.* at 642 (emphasis added). The statute, 20 U.S.C. § 1681(a), reads, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or *be subjected* to discrimination *under* any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).

[67] *Davis*, 526 U.S. at 645.

[68] *Id.* at 630.

[69] *See id.* at 629; *Murrell*, 186 F.3d 1238; *Farmer v. Kansas State Univ.*, 918 F.3d 1094; *Ross v. Univ. of Tulsa*, 859 F.3d 1280 (10th Cir. 2017).

[70] *Simpson*, 500 F.3d at 1179 (10th Cir. 2007) (finding high school football recruits were under the university's control).

[71] *Davis*, 526 U.S. at 645 (quoting 20 U.S.C. §§ 1681(a), 1687).

> . . . .
>> [E]ducation program or activity" includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution.[72]

Courts focus on whether the recipient owns or regulates the physical location, sponsors the event, or hosts or facilitates the program or activity. Locations on a school's campus are frequently found to be within the recipient's control.[73] Off-campus harassment may be within the recipient's control when there is "some nexus between the out-of-school conduct and the school."[74] For example, the Tenth Circuit has found an off-campus fraternity promoted and regulated by the recipient and subject to the recipient's disciplinary authority may be within the recipient's control.[75]

With this framework outlining "control," the court turns to whether Plaintiff adequately alleges that UVU and USHE had the requisite "substantial control" over the alleged harasser and the context of the harassment described in Plaintiff's Second Amended Complaint.

### A. Plaintiff Does Not Sufficiently Allege that UVU Exercised Substantial Control Over the Alleged Harasser and the Context of the Harassment.

In Plaintiff's Opposition to UVU's Motion to Dismiss, Plaintiff does not point to any fact allegations that would make it plausible that UVU had substantial control over the harasser or the context of the harassment. Instead, Plaintiff seemingly cedes the point.[76] In lieu of identifying facts making it plausible that UVU had any control over the harasser or the context of the

---

[72] 34 C.F.R. § 106.44(a) (emphasis added).
[73] *See Davis*, 526 U.S. 629; *Murrell*, 186 F.3d at 1247 (finding harassment in school during school hours was sufficient); *Ross*, 859 F.3d at 1287 n.5 (finding private apartment on campus could be within the recipient's control).
[74] *Rost*, 511 F.3d at 1122 n.1 (citing *Davis*, 526 U.S. at 645).
[75] *Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1168 (D. Kan. 2017), *aff'd sub nom. Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019).
[76] *See* Opp'n to UVU's Mot. to Dismiss 6, ECF No. 39 ("While Defendant may not have been able to control Assailant's behavior or the Party . . . .").

harassment, Plaintiff's Opposition invites the court to consider the Department of Education ("DOE") policy guidance from 2014 on school responses to sexual violence.[77]

But this court is bound by Supreme Court precedent. As noted earlier, the Supreme Court has made it plain that a deliberate indifference claim may be made in private actions "wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs."[78] Here, there are no fact allegations that UVU had any control over the harasser: he was not a student at UVU, and Plaintiff does not allege that UVU had any authority over him. Further, Plaintiff does not allege that UVU had any control over the environment in which the harassment occurred: a party at a U of U student's residence. Plaintiff does not allege that the September 15 gathering was facilitated, sponsored, or endorsed by UVU.

Turning to the DOE policy guidance cited by Plaintiff, it does not support her claim. First, agency policy guidance does not supersede Supreme Court precedent. Even if the DOE guidance were to suggest that substantial control over the harasser and the context of the harassment were not necessary elements of a private action, it would not change the law that binds this court. Second, the DOE guidance relied upon by Plaintiff is marked in red at the top of every page with the following advisement: "Rescinded: This document has been formally rescinded by the Department and remains available on the web for historical purposes only."[79] Whatever effect the guidance had prior to being rescinded, it obviously is not in effect now and was not in effect at the time of Plaintiff's assault.[80] In short, the argument that the rescinded DOE guidance changes the requirement for pleading a cognizable claim is without merit.

---

[77] *Id.* at 7–11.
[78] *Davis*, 526 U.S. at 645.
[79] *See* OFF. CIVIL RTS., U.S. DEP'T EDUC., QUESTIONS AND ANSWERS ON TITLE IX AND SEXUAL VIOLENCE at i (2014).
[80] *Rescinded Policy Guidance*, U.S. DEP'T EDUC.: OFF. CIVIL RTS., https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/policyguidance/respolicy.html (last modified Aug. 16, 2021) (showing the 2014 guidance was rescinded on September 22, 2017); *see* OFFICE FOR CIVIL RIGHTS, U.S.

Because the Second Amended Complaint does not make it plausible that UVU had substantial control over both the harasser and the context of the harassment, the claim against UVU must necessarily fail as a matter of law. Therefore, it is dismissed.

### B. Plaintiff Does Not Sufficiently Allege that USHE Exercised Substantial Control Over the Harasser or the Context of the Harassment.

The Second Amended Complaint also does not state sufficient factual allegations that would make it plausible USHE exercised substantial control over the harasser (a U of U student) or the environment in which the harassment occurred (a gathering of students at a house off-campus). Plaintiff offers a variety of responses.

Plaintiff first asserts that "the appropriate 'context' is not the house party; the appropriate 'context' is the member schools." [81] Plaintiff offers no authority or even explanation for this argument, turning instead to truncated quotes from the statute and from *Davis* that do not address, much less support, the "context as member schools" claim. In contrast, the Second Amended Complaint sets forth the context of the harassment—an assault during a party at an off-campus house—and identifies the assailant, a student who was a football player at the U of U.[82] As noted earlier, the regulations make it plain that the sexual harassment in question must be "in an education program or activity of the recipient" and that an "'education program or activity' includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs."[83]

---

DEP'T EDUC., QUESTIONS AND ANSWERS ON THE TITLE IX REGULATIONS ON SEXUAL HARASSMENT 10 (updated June 28, 2022) ("Although the guidance documents issued in 2011 and 2014 were rescinded in 2017, and the 2001 and 2017 guidance documents were rescinded in 2020, these documents remain accessible on OCR's website for historical purposes to the extent they are helpful to schools when responding to earlier allegations of sexual harassment.").
[81] Opp'n to USHE's Mot. to Dismiss 6.
[82] Second Am. Compl. ¶¶ 101–107.
[83] 34 C.F.R. § 106.44(a).

Plaintiff has cited no authority supporting the view that a college or system of higher education is itself the context for harassment, and the court is not aware of any.

Next, Plaintiff argues that the Supreme Court's decision in *Davis Next Friend LaShonda D. v. Monroe County Board of Education* supports her claim against USHE.[84] But *Davis* was a case in which one elementary school student sexually harassed another elementary school student at an elementary school during school hours.[85] Despite the child and her mother (and later, other victims) repeatedly reporting the harassment to two teachers and the principal, the school took no disciplinary action, and the harassment continued.[86] The *Davis* Court had to decide whether Title IX would support a private action "when the harasser is a student rather than a teacher."[87] The Court "conclude[d] that, in certain limited circumstances, it does."[88] As noted earlier, the Court ultimately concluded that an action for damages was limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs."[89] Because the school had control over the harasser (its student) through disciplinary authority and controlled the context of the harassment (the classrooms and hallways of the school), a claim was possible. Far from supporting Plaintiff's claim against USHE, *Davis* precludes it: Plaintiff alleges no facts making it plausible that USHE had "substantial control over both the harasser" (the U of U football player) and the context in which the known harassment occurs (the gathering at the U of U student's house).[90]

---

[84] Opp'n to USHE's Mot. to Dismiss 6–9.

[85] *Davis*, 526 U.S. at 633–35, 646 ("Where, as here, the misconduct occurs during school hours and on school grounds—the bulk of G.F.'s misconduct, in fact, took place in the classroom—the misconduct is taking place 'under' an 'operation' of the funding recipient.").

[86] *Id.* at 653–54.

[87] *Id.* at 643.

[88] *Id.*

[89] *Id.* at 645.

[90] Plaintiff cites other parts of *Davis*, including the allegation that no policy had been implemented or training occurred, that the Board could be liable for its failure to act after it became aware of the harassment, that it had failed to remedy the violation, and that it was required to act in a manner that was not clearly unreasonable. Opp'n,

Finally, Plaintiff argues that USHE "had a duty to implement non-discriminatory policies in its member schools to protect students from campus safety concerns including sexual assault under Title IX" but that instead "USHE has 'a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient.'"[91] These and other related statements in the Opposition are unaccompanied by any cite to authority other than *Davis*, and as noted above it is *Davis* itself, together with its reading of the Title IX statute and regulations, that prevent Plaintiff from stating a claim.

However, the Second Amended Complaint also cites the Tenth Circuit decision in *Simpson v. University of Colorado Boulder*.[92] The court understands this to mean that Plaintiff believes *Simpson* supports her claim, though she does not cite or discuss the case in her Opposition to USHE's Motion to Dismiss.

In *Simpson*, Plaintiffs alleged that the University of Colorado (CU) had created an official football player recruiting program where CU paired each recruit with a female CU student Ambassador and a CU player-host.[93] The CU Ambassadors and player-hosts were responsible for escorting the recruits around campus and entertaining them.[94] The court noted that "the gist of the complaint is that CU sanctioned, supported, even funded a program (showing recruits a 'good time') that, without proper control would encourage young men to engage in opprobrious acts."[95] Plaintiffs further alleged that CU recruits sexually harassed and assaulted a high school

---

6–8. Of course, none of these removes *Davis*'s requirement that "the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645. Accordingly, they do not change the result.

[91] Second Am. Compl. ¶ 179.

[92] *Id.* ¶¶ 94, 97–99, 179.

[93] *Simpson*, 500 F.3d at 1173.

[94] *Id.*

[95] *Id.* at 1177.

girl as a result of the program, and that the coaching staff was informed of that earlier assault.[96]

Then, in 2001, Plaintiffs themselves were sexually assaulted "by CU football players and high-school recruits on a recruiting visit."[97]

In considering the case, the Tenth Circuit noted the requirements set forth by the Supreme Court's earlier decision in *Davis*. The court found that the "student-on-student-harassment framework" was an "imperfect one" for the fact pattern before it because the

> alleged sexual assaults were not simply misconduct that happened to occur at CU among its students. Plaintiffs allege that the assaults arose out of an official school program, the recruitment of high-school athletes . . . . and were the natural, perhaps inevitable result of an officially sanctioned but unsupervised effort to show recruits a "good time."[98]

The Tenth Circuit then reasoned that a recipient could be found liable under Title IX "when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient."[99] This was in keeping with *Davis*, because "[i]mplementation of an official policy can certainly be a circumstance under which the recipient exercises significant 'control over the harasser and the environment in which the harassment occurs.'"[100]

In short, *Simpson* was about a university's official football recruiting efforts in which it "sanctioned, supported, [and] even funded a program" in which it encouraged its own students to serve as university ambassadors and player-hosts to entertain and escort football recruits, all for

---

[96] *Id.* at 1173.
[97] *Id.*
[98] *Id.* at 1174–75.
[99] *Id.* at 1178.
[100] *Id.*

14

the purpose of showing them a "good time" and getting them to join the football team.[101] The university allegedly knew not only that its students were likely to be sexually harassed as a result of its own recruiting program, but also that sexual assaults in fact were occurring because of the program.[102]

Simpson does not support Plaintiff's claim against USHE. Unlike in Simpson, there are no allegations here that USHE instituted a specific program that caused sexual harassment to occur. Instead, the Second Amended Complaint alleges that USHE knew that there was an obvious risk of sexual harassment and assault at its member schools but failed to train its member schools to institute adequate policies addressing the risk.[103] It also alleges that USHE became aware of Plaintiff's sexual assault, but did nothing.[104] But none of those allegations assert, much less make it plausible, that a specific program at USHE caused Plaintiff to be sexually harassed.

Unlike Simpson, the Second Amended Complaint does not allege that USHE created a university program, recruited students to participate, and then turned a blind eye to the assaults caused by its program. In contrast to Simpson, there are no fact allegations here that the sexual assault "arose out of an official [USHE] program. . . . and [was] the natural, perhaps inevitable result of an officially sanctioned but unsupervised effort."[105]

It is also clear that Simpson did not dispense with Davis's requirement of substantial control over the harasser and the context of the harassment. Instead, Simpson found the requirement met on the facts before it: a university recruiting program created, funded, and

---

[101] Id. at 1177.
[102] Id. at 1184.
[103] Second Am. Compl. ¶¶ 157, 171–174.
[104] Id. at ¶¶ 149–150, 154, 175, 180.
[105] Simpson, 500 F.3d at 1174–75.

sponsored to benefit the football team in which it enlisted its own students knowing that sexual harassment was occurring and would continue to occur—all because of the program itself. So, depending on the facts, "[i]mplementation of an official policy can certainly be a circumstance under which the recipient exercises significant 'control over the harasser and the environment in which the harassment occurs.'"[106] And it is not hard to see why: the harassers were the university's students and its invited guests, the harassment occurred during university-sponsored recruiting trips, and it was facilitated by the university's charge to its students to show the recruits a "good time." In short, the *Simpson* plaintiffs pled facts making it plausible that the university had significant control over the assailants (its own students and recruits) and the environment in which the assaults occurred (the university recruiting trips).

The facts making control plausible there are absent here. The Second Amended Complaint pleads no facts making it plausible that USHE had disciplinary authority over the assailant. And the Second Amended Complaint does not plead facts making it plausible that USHE exercised any control over the house gathering where the assault occurred. The Second Amended Complaint simply does not state a plausible claim against USHE under either *Davis* or *Simpson*. And this court is bound by these Supreme Court and Tenth Circuit cases.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that Defendant UVU's Motion to Dismiss is GRANTED. IT IS FURTHER ORDERED that Defendant USHE's Motion to Dismiss is GRANTED.

---

[106] *Id.* at 1178.

If Plaintiff has a good faith basis for alleging facts that would meet the "control over the harasser and the environment in which the harassment occurs" requirement, she may seek leave to amend her complaint within 30 days under DUCivR 15-1(a).

Signed March 3, 2023.

BY THE COURT

_____
David Barlow
United States District Judge

17